---

### SUPREME COURT.

In the matter of the petition of JAMES W. BEEKMAN, to vacate assessments, &c.

An *ordinance* of the common council of the city of New York authorizing an assessment, passed by the board of assistant aldermen in one year, and by the board of aldermen in another succeeding year, a new board of assistant aldermen having been elected during the time, although approved by the mayor, is absolutely *void*, and no *amendment* can give it vitality. (*See to the same effect, Wetmore* agt. *Story,* 22 *Barb.*, 414; *and Matter of Beams*, 17 *How. Pr. R.*, 459.)

An application to set aside and vacate such an ordinance, and all proceedings under it for irregularity, is authorized by the "act in relation to frauds in assessments for local improvements in the city of New York," passed April 17, 1858.

This last mentioned act is not in violation of the constitution of this state, which provides that justices of the supreme court shall not hold any other office or public trust; it does not undertake to confer any new *jurisdiction*, but assumes the old and conceded jurisdiction of this court over frauds and legal irregularities.

*New York Special Term, October,* 1860.

APPLICATION by James W. Beekman to vacate assessments, &c., under an ordinance passed by the board of assistant aldermen, in the city of New York, on the 8th of May, 1851, and by the board of aldermen on the 6th of February, 1852.

HENRY Z. HAYNER, *for the petitioner.*
H. H. ANDERSON, *for the corporation.*

SUTHERLAND, Justice. The assessment and proceedings complained of by the petitioner must be vacated, because the ordinance purporting to authorize such assessment and proceedings was passed by the board of assistants on the 8th of May, 1851, and by the board of aldermen on the 6th of February, 1852, that is, because it was not passed by both boards in the same year, but was passed by them in different years, so that when passed by the board of aldermen on the 6th of February, 1852, the board of assistants by whom it had been passed had been retired from office, and had been succeeded by a new board of assistants.

It was expressly decided by the general term of this court, in *Wetmore* agt. *Story* (22 *Barb.*, 414), that an ordinance so passed was absolutely void, although in form duly approved by the mayor, on the ground, as I understand the reported reasons for the decision, that the legislature in designating by the charter the power vested in the two boards as the common council of the city, as the *legislative* power, must be presumed to have intended that the universally recognized principles of *actual* legislatures or legislative bodies, should apply to and control the so called legislative action of the common council of the city of New York, so that a resolution or ordinance passed by the board of assistants in one year, could not be taken up as unfinished business, and concurred in by the board of aldermen in

another year, so as to make it a valid resolution or ordinance of the common council, without consulting the existing board of assistants; but that like the unfinished business of *other legislative bodies*, it must be taken up *de novo*.

Whatever might be my own opinion of this question as an original question, it would not be proper or in order for me to set up my own opinion against this express decision of the general term, and I must therefore hold in this case that the ordinance purporting to authorize the assessment and proceedings of which the petitioner complains, although approved by the mayor on the 7th of February, 1852, was absolutely void, and did not in fact authorize such assessment and proceedings.

If absolutely void, the subsequent amendment of it in 1853, by striking out the names of the three assessors originally inserted, and inserting three others in their place, did not and could not confirm it, so as to make it a valid ordinance. There is nothing to show that when that amendment was made the common council had the remotest idea that the ordinance required any confirmation. The amendment was in terms confined to the insertion of the three new names in the place of those originally inserted.

This application is made under the act entitled "an act in relation to frauds in assessments for local improvements in the city of New York," passed April 17th, 1858.

It cannot be doubted if the words "*legal irregularity*," as used in the 1st section of the act, mean anything; that the irregularity in the passage of the ordinance authorizing the assessment and proceedings in question was and is a "legal irregularity" within the meaning of the act. The ordinance was, or purported to be, the very foundation or authority for the assessment and proceedings complained of. The irregularity of its passage must, under the decision in *Wetmore* agt. *Story*, be held to be fatal to the assessment and all proceedings under it.

But it is insisted on the part of the corporation, that the said act of the legislature under which the application is made, was passed in violation of art. 6, § 8 of the constitution of this state, which provides that justices of the supreme court shall not hold any other office or public trust; that the act undertakes to confer on the justices of this court a new or other office or public trust, which by the constitution the legislature were prohibited from doing, and the justices of this court are prohibited from accepting or exercising; and therefore, that I, as one of such justices, cannot entertain this proceeding, or make any order or adjudication in it.

It is very clear to me that this act does not undertake to confer any new, or other office, or public trust on the justices of this court, within the meaning of the constitutional provision.

This court always had jurisdiction over the frauds and legal irregularities (so called by the statute), not only of individuals but of corporations, municipal and private, within its jurisdiction; and could always furnish a remedy to a party who had suffered, or was about to suffer, by such fraud or irregularity, in an action brought by him for such remedy, and perhaps in certain cases, and under certain circumstances, could by *mandamus* or *certiorari* give a remedy for fraud or irregularity in the proceedings of a municipal corporation.

I think the act of April 17th, 1858, in question, assumes this old and conceded jurisdiction of this court over frauds and legal irregularities (so called). It does not undertake to confer any new jurisdiction, or a jurisdiction over a new or additional class of subjects on the court, or the justices thereof, but simply declares that an old and conceded jurisdiction of the court may be exercised and enforced through its justices in a new and summary manner, as to a certain class of frauds and "legal irregularities" mentioned in the act. As the court can only act and exercise its jurisdiction

through its justices, the act in form declares that the justices of the court shall exercise the jurisdiction in the summary manner prescribed by the act. The act gives to the justices new and additional powers, and imposes upon them new and additional duties, but only as to the mode or manner of exercising an old and conceded jurisdiction, and which, as I have before said, I think the act itself assumes to belong to the court. The act, in fact, gives a new remedy for an old and conceded class of wrongs, and that is all it does or undertakes to do.

If the act had extended the jurisdiction of the court, or in form the jurisdiction of its justices, to a class of municipal frauds and irregularities, for which at the time there was no legal or judicial remedy, I do not think it would at all have interfered with the constitutional provision referred to.

The legislature is constantly conferring on this court, or in form on its justices, new powers, and imposing on them new duties. Of this its justices may perhaps have some reason to complain, but I do not see how the constitution can if the duties are judicial duties.

The powers and duties of a public officer may be said in a certain sense to constitute the office; but adding one or several additional judicial duties to the office of a justice of the supreme court, whose powers and duties are already so multifarious and extensive, can no more confer on him any other office or public trust than "one swallow can make a summer."

On this point my conclusion is, that it is competent for me as a justice of this court to entertain this proceeding, instituted by the petitioner under the act of 1858, and that I have jurisdiction under the act to grant the relief asked for by him.