from the firm.  Plaintiff's answer to this proposition is that she was not bound to speak until the defendant had satisfied the burden of proof upon him of showing notice to her, and thus the learned trial court has held.  In this holding, however, it appears to us that he has committed an error.  At the time that she received this check of Akin & Davitt, she had notice at least that some change had been made in the firm.  She was largely interested in that firm, because of the fact that she had $20,000 in there.  Knowing that that firm had been changed with her interest therein, all the parties living within a short radius, the inference seems to me irresistible that she knew that the firm of Akin & Davitt was composed of her son and her son-in-law.  That inference is strengthened by the fact that while, after 1898, no interest was paid to her, no claim seems to have been made against David Akin in his lifetime.  With the probabilities so strong that she had knowledge of the retirement of David Akin, her failure to deny such knowledge, or at least to offer to be sworn thereupon, is in my judgment of controlling significance.  If such evidence be offered and objected to under Code Civ. Proc. § 829, it is not intended to pass upon its admissibility.  To allow a recovery in this case after the death of David Akin, without a denial on her part that she had knowledge that he had retired from the firm, with all the inferences pointing to the fact that she must have had knowledge, would in my judgment be against good conscience, and so far against the weight of evidence that it should not be suffered in a court either of equity or law.

As the judgment must rest, then, upon this finding that she took this interest upon January 1, 1897, without knowledge of the retirement of David Akin from the firm, the judgment must be reversed on law and fact, and a new trial granted, with costs to appellant to abide the event.  All concur, except COCHRANE, J., who dissents.

---

(123 App. Div. 141.)

PEOPLE ex rel. NEW YORK CENT. & H. R. R. CO. et al. v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department.  January 8, 1908.)

1. MUNICIPAL CORPORATIONS—PROCEEDINGS OF COUNCIL—ORDINANCES—ENACTMENT.

The common council of the city of Buffalo is a continuous body, and proceedings begun may be completed, although new members may have been elected to the council in the meantime; and hence a resolution initiating a proceeding for paving a street passed by the board of aldermen and the board of councilmen and vetoed by the mayor may be passed over the veto by the required vote of later boards in which several new members were sitting.

2. SAME.

Section 18 of the charter of the city of Buffalo (Laws 1891, p. 139, c. 105, and amendments), providing that, if an ordinance or resolution of the common council is vetoed by the mayor, it shall be laid before the board of aldermen at its next regular meeting, and they shall proceed to reconsider it, does not require that it must be acted on at that meeting.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 235.]

Appeal from Special Term, Erie County.

Certiorari by the people, on the relation of the New York Central & Hudson River Railroad Company and others, against the city of Buffalo. From a judgment dismissing the writ, plaintiffs appeal. Affirmed.

On the 26th day of January, 1903, the board of aldermen of the city of Buffalo adopted a resolution initiating the proceeding for the paving of Curtiss street, between Broadway and Williams streets, in that city, and in May following the resolution was approved by the board of councilmen, which is the other legislative branch of the municipal government. The proceeding was thereafter advanced from time to time in the various stages prescribed by the city charter, and was opposed by the relators upon whose property a considerable part of the expense of the new pavement would be charged. The committee on streets of the board of aldermen had reported in favor of the confirmation of the assessment roll for paving the street, and on the 5th of September, 1905, the report was adopted by the board of aldermen, and on December 20th the board of councilmen approved the resolution. On the 30th day of December Mayor Knight disapproved the resolution, and his veto message was transmitted to the board of aldermen at its session on the 1st of January, and a motion for confirmation of the assessment roll then made was laid on the table. On the 15th of January the roll was confirmed by the board of aldermen in spite of the veto message by a vote of 23 to 1, and two days later its action was approved by the board of councilmen. A writ of certiorari was thereupon granted upon the application of the relators to review the regularity of the confirmation of the assessment roll, which was dismissed at Special Term.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Maurice C. Spratt and Alfred L. Becker, for appellants.
Samuel F. Moran, for respondent.

SPRING, J. Section 18 of the charter of the city of Buffalo (chapter 105, p. 139, Laws 1891, and amendments thereto), so far as germane, provides:

"Every ordinance and resolution of the common council * * * shall be presented to the mayor before it shall be of force. If he approves it he shall sign it; but if not, he shall return it, with his objections, to the city clerk, who shall lay the same before the board of aldermen at its next regular meeting thereafter. The board of aldermen shall enter the objections upon its journal, and proceed to reconsider the ordinance or resolution objected to."

The required majority vote to make the reconsideration effective is then provided for, which is not pertinent on this appeal; and if the necessary number of members "agree to pass" the ordinance or resolution, the city clerk is required to present it "to the board of councilmen at its next meeting with the objections of the mayor and a report of the action of the board of aldermen. The board of councilmen shall reconsider its action," and the required number of that body essential to adopt the resolution is then stated. The common council consists of 9 councilmen and 25 aldermen. The councilmen hold for four years, and are elected in the odd-numbered years, four and five members alternately. Section 6 of the charter. The aldermen hold for two years, and are elected one from each ward of the city at the election in each odd-numbered year (section 7); and at the election in 1905 all of the aldermen were elected and their official duties commenced on January 1st

following. At the same election four members of the board of council-men were elected, taking office January 1, 1906. On that day another councilman was chosen in place of James N. Adam, who resigned as a member of that body to accept the office of mayor to which he had been elected in the fall of 1905.

The claim of the relators is that the common council is not a con-tinuous body, and the members of the new board could not "reconsid-er" the question of the confirmation of the assessment, for they had never considered it. If they were to take action at all, it must have been by a vote on the original proposition, instead of in overriding the veto of the mayor, or else by commencing the entire proceeding de novo. The argument is founded somewhat upon the suggested analogy between the common council and the Congress or the State Legislature, where, by inference at least, the body is not a continuous one, in that any act passed and disapproved by the executive within the prescribed time after adjournment cannot be reconsidered by the succeeding Con-gress or Legislature, but a new enactment must be passed. There is a necessity for the common council of a city acting as an uninterrupted organization which does not exist in the case of the state or national Legislature. In the former, proceedings run along for some time and consist of several distinct acts, each essential before their culmination. The present proceeding for the pavement of Curtiss street was com-menced in January, 1903, and nearly three years elapsed before the confirmation of the assessment roll was vetoed by the mayor. On De-cember 31, 1903, the term of office of each alderman expired, and chan-ges also occurred in the board of councilmen in the same manner, and yet the proceeding was continued by the common council. With the in-creasing importance of municipal affairs, the drift has been towards home rule by enlarging the scope of the municipal bodies intrusted with legislative functions. The common council of a city is in session very frequently. Its meetings are public, it has general supervision of the local affairs of the municipality, and jurisdiction over proceed-ings of a quasi judicial character. The proceeding for local improve-ments terminating in an assessment roll and tax levy is involved, and embraces many separate stages. Often many parties are directly inter-ested and all have a right to be heard, and not infrequently several years elapse before it is finally concluded. If, whenever a change is made in the composition of the board of aldermen, the proceeding is to end, much disorder, expense, and hardship would result. Delay might be the chief weapon to defeat a proceeding of great public benefit.

In the present proceeding the original resolution required the com-missioner of public works to advertise for bids, which was done; and that functionary so reported to the common council, which body, and the mayor, also, approved of his action. The commissioner of pub-lic works then reported the bids which he had received to the common council, which passed a resolution determining the kind of material to be used, and the expense to be assessed, and directed the board of as-sessors to make the assessment, which it did, reporting to the common council, and objections were interposed and hearings had by that body, resulting finally in the resolution which was vetoed by the mayor, as already mentioned. I refer to these steps briefly for the purpose of

showing that several of the distinctive municipal organizations entertained jurisdiction over respective stages of the proceeding, and yet in all of them the common council was the determining body. The men· comprising the body which approved the reports as they were presented to the common council from time to time in 1904 and 1905 were not the same who took the initiative in the original resolution in January, 1903. There had been a new election in the meantime. It is quite probable there were other changes in the membership of the common council by death or resignation, but no attention was given to the personnel of the body as the proceeding in its varied stages was discussed and embodied in resolutions. If the body is a continuous one when a proceeding is taken up in any of its phases, that is a reconsideration, for it is the board of aldermen or board of councilmen as an entity which reconsiders, and not its constituent members. In the present extended authority of the common council it would be impracticable to have each pending proceeding cease whenever changes occur in its individual members. With the contrary rule prevailing, if the report of the commissioner of public works had been sent back by the common council for correction, or for the purpose of obtaining additional information, upon the rendering of the further report in conformity to the direction of the common council, the subject would be reconsidered and a change in the persons composing that body would have prevented further action by it. In either the Congress or state Legislature the legislative declaration is crystallized into an enactment, and there is no series of distinct preliminary acts carried on through the agency of other bodies, all indispensable, as steps leading up to the enactment itself. The territory of a city is not extensive. Any man competent to act as councilman or alderman is familiar in a general way with the needs of the city, and can soon acquaint himself with the procedure prescribed for assessing real estate for local improvements, or any other proceeding entertained by the body of which he is a member. Applications to amend orders or decisions involving the construction of those previously made are entertained ·by appellate tribunals, although the personnel of the court may have changed intervening the decision and the application to amend. The fact that there are members of the court who did not participate in the decision has not been deemed a bar to granting the application. I appreciate that the decision in Wetmore v. Story, 22 Barb. 414, is adverse to the construction here adopted. In that case there was the slight distinction that the resolution was adopted by the board of assistants, which was 'one branch of the governing body in one year, and the next year by the board of aldermen, which was the complementary branch, and in the meantime the terms of the members of the board of aldermen had expired by the election and qualification of successors. In other words, the newly elected body, which was a part of the legislative department at the time of the final passage of the resolution, had not taken any part in its adoption. The board of aldermen and the board of councilmen of the city of Buffalo each voted to override the veto in January. The Wetmore Case was decided in 1856. It was approved of reluctantly in two cases shortly thereafter (Matter of James W. Beekman, 19 How. Prac. 518; In Matter of Beams, 17 How. Prac. 459); and in these cases the distinction adverted to existed.

The changes in local self-government, as applied to cities, have been so extensive in the 50 years which have passed since the Wetmore-Story Case, and the powers intrusted to the governing bodies of municipalities have been so much enlarged and the circumstances, and conditions have so manifestly altered, that we do not feel bound by this decision.  See Booth v. Bayonne, 56 N. J. Law, 268, 28 Atl. 381.

It is claimed by the learned counsel for the appellants that it may not have been necessary to commence the entire proceeding anew, but the confirmation of the assessment roll which was vetoed by the mayor should have been passed again as an original resolution and resubmitted to the mayor for his action, and, if vetoed, it could then have been reconsidered.  This seems plausible; but let us test it.  The confirmation of the assessment roll was merely one step in the proceeding.  If the common council is not a continuous organization, then, whenever any phase of the procedure comes before that body after a change in its membership, no action can be taken.  The basis of the claimed inability to act is that the new members have not participated in the legislation, and are not familiar with it.  It must be from the initial resolution to its close before the same men in order to make their action effective.  If the resolution vetoed cannot be revived by the board because of its new members, then, by parity of reasoning, that body cannot pass the resolution over again because that confirms all the antecedent steps in which these same new members have taken no part.  Again, a majority vote only would have been required to pass the resolution.  This might have been done in the event of a veto message by the newly elected mayor, and the same vote which overruled his predecessor's objection would again have resulted in the confirmation of the report of the board of assessors.  The mode of procedure adopted, as a practical question, therefore, is not very important; and that would be so in any case where there are votes enough to disagree with the veto of the mayor.  Whatever the course taken may have been, there were votes in this case sufficient either to reconsider or adopt the resolution anew, and again repass it, in case the newly elected mayor saw fit to disapprove of the resolution.  The common council followed strictly the course prescribed by the charter.  The veto message was required to be laid before the board of aldermen, and it pursued the course defined in the charter.  It was then submitted to the upper house, which acted upon it, all of which was in precise accord with the duties imposed.  These bodies could not ignore the objections of the mayor for the charter made their duty plain.

It is urged that the resolution was not acted upon by the board of aldermen at its "next regular meeting" after receiving the veto message of the mayor.  There is no drastic requirement of that kind.  The clerk must "lay the same before the board at that meeting."  The board must "proceed to reconsider  *  *  *  the resolution objected to."  It is not essential that its action be ingrafted into a resolution at once.  With a body of new members not entirely familiar with the situation, time for reconsideration might be needed.  The objection of the mayor should be fairly weighed, and discussion may have been advisable.  The board was expected to act with reasonable dispatch; and this was done

for the resolution was passed within 15 days after it was transmitted to it by the mayor.

The order should be affirmed, with costs.

Order affirmed, with costs. All concur.