In the Matter of the Petition of DAVID BUCKLEY, Petitioner, against WILLIAM S. PUGH, Individually, and as Comptroller of the Second Class City of Utica, Defendant.

Supreme Court, Oneida County, July 24, 1930.

*Nicholas G. Powers,* for the petitioner.

*William S. Pugh,* defendant, in person.

EDMUND H. LEWIS, J.   By this proceeding the petitioner seeks an order of peremptory mandamus directing the defendant, as comptroller of the city of Utica, to audit a certain payroll, which includes wages due to the petitioner for labor performed in the department of public works, and to draw his warrant and take such further proceedings as may be required to effect payment thereof.

The petitioner has been employed by the department of public works since June 1, 1930, as a laborer upon work in connection with the development of the municipal airport.   He was paid on June 17 and July 2, 1930 — the regular semi-monthly pay days. On July seventeenth the payroll comprising the wages of petitioner and a number of other unskilled laborers doing work at the airport was certified by the proper officers and presented to the defendant as comptroller for audit.   Thereafter he refused to draw the required warrant in payment of the wages due the petitioner, claiming that he was without legal authority to do do.

The public work upon which the petitioner is employed as a laborer is the construction of the municipal landing field for airplanes. It has been held that such an enterprise is one in which a municipality can properly engage, and being a proper " city purpose " the cost thereof may be met by the proceeds of the sale of city bonds.   (*Hess* v. *Rath,* 249 N. Y. 436.)   Authorization for this particular public work is found in the following ordinance adopted by the common council April 18, 1928:

"210. By Ald. Thomas: Ordained, That the City Engineer is hereby authorized and directed to make the necessary surveys of the land to be acquired for the Utica Airport, and for such rights-of-way across private property, as may be necessary for roadways and drainage, and to make the necessary surveys and prepare plans for the development of said Airport, and the Commissioner of Public Works and the Corporation Counsel are hereby authorized and directed to negotiate with the owners of property for the land, rights-of-way or easements to be acquired for roadways or drainage, and *the Commissioner of Public Works is hereby authorized and directed to proceed with the construction necessary for the development of the Airport.*

"Be it further Ordained, That *the Commissioner of Public Works is hereby authorized and directed to employ such labor, teams, trucks and other equipment as may be necessary for said purpose.*

"Be it further Ordained, That the entire cost of the above mentioned work is hereby determined to be a charge against the funds provided by the issuance of public improvement bonds for the acquirement of lands and rights-of-ways or easements and for the surveys, engineering and construction work necessary for the development of the Utica Airport."

In accord with the direction of the above ordinance the commissioner of public works proceeded with the work authorized. He employed petitioner and other laborers and paid them until July seventeenth from the proceeds of bonds or certificates of indebtedness authorized to be sold for the purpose.

The defendant now contends that he has no authority to draw his warrant as comptroller of the city of Utica to meet a payroll (comprising among other items the wage claim of the petitioner) the total of which exceeds $500, no ordinance having been adopted by the common council as required by section 120 of the Second Class Cities Law (as amd. by Laws of 1920, chap. 215) determining it to be impracticable to procure the work by contract. This statute, which is invoked by the defendant, provides in part as follows:

"§ 120. Board of contract and supply. There shall be a board of contract and supply, composed of the mayor, comptroller, commissioner of public works, corporation counsel and city engineer. Except as otherwise provided by law, it shall be the duty of such board, after public notice and in accordance with regulations to be prescribed by general ordinance of the common council, to let to the lowest bidder, who will give adequate security therefor, all contracts for the performance of any work or for the supply of any material required by or for the use of any officer, board, body or

department of the city, in all cases where the expense of such work or materials, or both, shall exceed the sum of five hundred dollars, unless by ordinance of the common council adopted by a vote of not less than four-fifths of all the members thereof and unanimously approved by the board of estimate and apportionment, it is determined to be impracticable to procure such work or materials or both by contract, in which case said ordinance shall designate the officer, board or department to procure such work or purchase such materials. * * * ''

In my opinion there is a marked distinction between '' contracts for the performance of any work '' for the city or its officers, as referred to in the statute quoted, and *personal service* which an officer or department head is directed to employ to do authorized public work.

It will be noted that by the terms of the ordinance authorizing the work in question, the common council directed the commissioner of public works to '' proceed with the construction necessary for the development of the Airport '' and '' * * * to employ such labor, teams, trucks and other equipment as may be necessary for said purpose.'' He already possessed the power to employ the laborers necessary to repair or *improve* city property (Second Class Cities Law, § 91, as amd. by Laws of 1912, chap. 189); he now has the added mandate from the common council to employ the laborers necessary to develop an airport. By direction of this ordinance the commissioner of public works proceeded to perform the work authorized and employed a number of unskilled laborers of whom the petitioner is one.

If the defendant as comptroller can properly refuse to draw his warrant in payment of wages earned by this petitioner under the direction and the authorized employment of the commissioner of public works, he can with equal propriety refuse to draw his warrant for the payment of the payrolls of unskilled laborers who render personal service to those departments of the city government which care for and improve city parks, or collect garbage and ashes, or clean the streets.

The statute under consideration was not designed to regulate the employment of *personal service* of the type involved here. Such employment is regulated by the Civil Service Law and the rules adopted thereunder by the local municipal civil service commission which classified the petitioner as an unskilled laborer and regulated his employment.

In this connection it is of interest to note that the payroll for which the defendant refuses to draw his warrant as comptroller bears the certificate of the secretary of the municipal civil service

commission that the petitioner and other unskilled laborers named in the payroll occupy positions in the classified service and "have been appointed or employed in pursuance of the Civil Service Law and the rules made in pursuance of said law." (Laws of 1899, chap. 370.) It also bears a certificate signed by the commissioner of public works that the petitioner and the others named therein actually performed the services therein stated; that they were employed only as "unskilled laborers;" that the compensation specified was in accord with the regulations of the board of estimate and apportionment; and that the petitioner and the others named have taken and filed the constitutional oath in accord with chapter 574 of the Laws of 1917. ·

The Legislature, by the enactment of section 120 of the Second Class Cities Law and other statutes having to do with the administration of municipal affairs, has endeavored to insure common honesty in city government. In construing such statutes we must also bear in mind the further purpose of the Legislature to prescribe administrative procedure which will prove of practical application — a workable plan.

It would be a strained construction of this statute which would require every city officer or department head whose payroll over a half month period exceeded $500 to award a contract therefor by competitive bidding or which would require special action by the common council under the statute quoted above.

As an aid to the construction of this statute we are entitled to consider the practical construction given to it by public officers whose duty it is to enforce it. (*People ex rel. Werner* v. *Prendergast,* 206 N. Y. 405; *Bullock* v. *Cooley,* 225 id. 566; *People ex rel. Lewis* v. *Graves,* 219 App. Div. 233.) If we do so in this case it will be found that for years the Comptroller of the State of New York in auditing accounts of municipal comptrollers has not considered unskilled laborers, employed by municipal department heads, so classified under the Civil Service Law, to be affected by section 120 of the Second Class Cities Law (as amd. by Laws of 1920, chap. 215) when their total semi-monthly wages exceed $500.

I have reached the conclusion that section 120 of the Second Class Cities Law (as amd. by Laws of 1920, chap. 215) does not apply to the payroll in question so as to make the payment of wages thereunder illegal.

The defendant further contends that the acts of one common council are not controlling upon the common council of a succeeding administration and that until he receives further authorization from the present common council of the city of Utica directing the commissioner of public works to continue with the construction

of the municipal airport, involving to some extent a recently acquired parcel of contiguous land, he will not authorize the payment of wages of laborers employed upon the general work.

The common council as the legislative body of the city of Utica is a continuing one. (*People ex rel. New York Central & H. R. R. R. Co.* v. *City of Buffalo,* 123 App. Div. 141; *People ex rel. Holtzmann* v. *City of Schenectady,* 136 id. 127.) The legislative body which grants authority has the power to withdraw that authority. In this instance the common council by its ordinance of April 18, 1928, directed certain public officers, one of whom was the commissioner of public works, to proceed with the work necessary to develop a municipal airport. So long as the officers so designated to perform that work are doing so according to law and until it is completed or the common council revokes or limits the authority granted by its ordinance of April 18, 1928, the defendant is legally justified in drawing his warrant for the expenditure of the proceeds of bonds issued to meet the cost of such public work.

The order of peremptory mandamus sought by the petitioner in this proceeding may issue.