property therein. A construction leading to such a result must be rejected.

The judgment appealed from must be affirmed.

All concur.

———◆◆◆———

## SUPREME COURT.

The St. Patrick's Orphan Asylum and others agt. The Board of Education of the City of Rochester.

Where moneys are raised *in cities and districts for school purposes,* the schools of the several incorporated *Orphan Asylum Societies* within the state, other than those in the city of New York, are entitled under the act of 1850, to distribution thereof in the same manner and to the same extent, in proportion to the number of children educated therein, as the *common schools* in their respective cities and districts.

But moneys devoted by the *constitution* of the state for the support of common schools, cannot be lawfully appropriated to the support of such asylums, or for the support of common schools therein, as the latter is not a common school within the constitutional meaning of the term "common schools." (*People* agt. *Board of Education, Brooklyn,* 13 *Barb.* 400; *People ex rel. Brooklyn Orphan Asylum* agt. *Board of Education, Brooklyn, Ms. Court of Appeals.*)

*Monroe General Term, September,* 1867.

*Before* Welles, Johnson *and* E. Darwin Smith, *Justices.*

T. C. Montgomery *and* W. J. Sheridan, *for plaintiffs.*

E. A. Raymond, *for defendants.*

*By the court,* E. Darwin Smith, J. The legislature in 1850, passed an act entitled " an act to provide for the better education of the children in the several orphan asylums in this state other than in the city of New York," the first section of which is as follows:

" The schools of the several incorporated orphan asylum societies within this state, other than those in the city of New York, shall participate in the distribution of the school moneys, in the same manner, and to the same extent, in proportion to the number of children educated therein, as the common schools in their respective cities or districts."

This section is very clear and explicit. It declares that the children educated in the orphan asylums of the state, out of the city of the New York, shall participate in the distribution of the school moneys, in the same manner, and to the same extent as the common schools in the respective cities and districts.

The question submitted to us is whether this is a valid law. It clearly has not been repealed by subsequent legislation, and is still in force. The common school system of this state was originally a creature of the legislature.

In section 10, of article 7, of the constitution of 1822, it is provided "that the proceeds of all lands belonging to this state, except such parts thereof as may be reserved or appropriated to public use, or ceded to the United States, which shall hereafter be sold or disposed of, together with the fund denominated the common school fund, shall be and remain a perpetual fund, the interest of which shall be inviolably appropriated and applied to the support of common schools throughout this state."

And section 1, of the 9th article of the constitution of 1846, is as follows:

"The capital of the common school fund, the capital of the literature fund, and the capital of the United States deposit fund, shall be respectively preserved inviolate. The revenue of the common school fund shall be applied to the support of the common schools. The revenues of the said literature fund shall be applied to the support of the academies, and the sum of $25,000 of the revenue of the United States deposit fund, shall each year be appropriated to and made part of the capital of the said common school fund."

These provisions of the constitutions of 1822 and 1846, recognize as existing, a common school system for the state, and continue the same as a permanent institution. The primary policy and intent of the legislature in establishing common schools, and of these provisions in the constitutions of the state, was to secure and perpetuate a system of schools,

which should embrace as far as possible, the education of every child of the state. And I should have thought if the question were an original one, that a discretion must exist in the legislature to provide in furtherance of this policy, for the education of poor orphan children in any mode essential or best adapted to that end, even though they did not receive such education in schools ordinarily called common schools, and that orphan schools, or schools kept in orphan asylums, might be regarded as common schools, within the spirit and intent of the constitution, in furtherance of this policy; but in the case of *The People* agt. *The Board of Education of Brooklyn* (13 *Barb. p.* 400), this court at general term in the second district held otherwise; and held that an orphan asylum was not a common school within the constitutional meaning of the term common schools, and that for that reason no portion of the moneys devoted by the constitution for the support of common schools, could be lawfully appropriated to the support of such asylums, or for the support of schools therein. In this view of this constitutional provision, the court of appeals seems to have concurred, in the case of *The People ex rel. The Brooklyn Orphan Asylum* agt. *The Board of Education of the City of Brooklyn*, or such was the opinion of Judge DENIO, who gives the opinion of the court in that case, a manuscript copy of which has been furnished to us on the argument. I do not see, therefore, why these decisions are not binding upon us on that question.

But in that case moneys were raised in the city of Brooklyn for school purposes, and the constitutional provision was held not to apply to such moneys.

This was particularly so held in this court, in the opinions of Judges BROWN and STRONG, in the last mentioned case, and so far these opinions and judgment in that case on that point, was approved in the court of appeals.

Within the authorities of these two cases, I do not see, therefore, why the plaintiffs are not entitled to share in all the money raised in the city of Rochester, or received by the

defendants for school purposes, except the money received from the state from the school funds referred to in the constitutional provision aforesaid.

Of the moneys so raised in the city of Rochester, the plaintiffs are entitled to share in a rateable proportion for the children taught by them, with the other children of the city attending the public schools under the charge of the board of education, precisely the same, and upon the same principles, as if they attended such schools.

The legislature clearly intended to put orphan asylums upon the same footing and position with the common schools, and to include them within all provisions of law applicable to such schools.

They are subject to the rules and regulations and oversight of the board of education, in the same manner as the common schools in the cities and districts of the state, by the express provisions of section two of the said act. And the defendants are bound to treat them, so far as they are in fact schools for orphan and indigent children, precisely as if they were in separate districts, or were common schools; in fact, except in respect to the money received from the state, I see do difficulty in making the proper discrimination by the board of education in respect to such monies.

Judgment should be given for the plaintiffs according to these views.