(35 Misc. Rep. 321.)

SARGENT v. BOARD OF EDUCATION OF CITY OF ROCHESTER et al.

(Supreme Court, Special Term, Monroe County. June, 1901.)

1. CONSTITUTIONAL LAW—ORPHAN ASYLUMS—MUNICIPAL AID.

An orphan asylum wherein the inmates are instructed as an incident of their care, but where no religious instructions are given during school hours, *held* not within Const. art. 9, § 4, forbidding the state or any subdivision thereof from aiding or maintaining a "school or institution of learning" in which any denominational tenet or doctrine is taught.

2. SAME—SALARIES OF TEACHERS.

Const. art. 8, § 14, provides that nothing in the constitution shall prevent any county, city, or town from providing for the support and education of inmates of orphan asylums. The consolidated school law (Laws 1894, c. 556, tit. 15, art. 12) provides that the schools of incorporated orphan asylums may participate in the distribution of school moneys, subject to rules and regulations of common schools in the cities or districts in which the money is applied; they to remain under the immediate management and direction of such orphan asylum societies, as before the passage of the act. *Held* to authorize the board of education in a city in which such an asylum is located to pay salaries of teachers of such asylum out of moneys raised by the city by direct taxation.

Action by James Sargent against the board of education of the city of Rochester and others for an injunction. Denied.

David N. Salisbury, for the motion.
James M. E. O'Grady and Porter M. French, opposed.

RICH, J. The plaintiff brings this action, as a taxpayer of the city of Rochester, to restrain its board of education and its financial officers from paying the salaries of four teachers of the St. Mary's Boys' Orphan Asylum of said city. It appears that this orphan asylum was incorporated in December, 1864, for the "maintenance and tuition of orphan children of the male sex, and in particular the male orphan children of soldiers who have lost their lives in the service of the United States"; that said corporation is the successor of a similar corporation which had been in existence in Rochester for many years; that since its incorporation the city of Rochester, through its board of education, has contributed to said corporation for the purpose of the secular education of the orphans under the charge of said asylum; that such secular education corresponds to and is the same as that furnished to children of like age in the public schools in the city of Rochester,—the same system of grades, the same course of study, the same text-books, the same examinations, and the same hours of study being submitted to and made use of in the secular education of the inmates of said asylum; that under the rules of said asylum no denominational tenet or doctrine is taught or religious instruction imparted in said asylum during the hours of school prescribed by the rules and regulations of the board of education of the city of Rochester. It further appears that the four teachers whose salaries it is sought by this action to cut off have been in the employ of the board of education, one for 13 years, one 11 years, one 8 years, and one 3 years; that all of these teachers are educated and experienced teachers. It further appears that said asylum is subject to visitation by the state board of charities, and that inmates of said asylum are received and maintained pursuant to rules established by the state board of charities. It will thus be seen that there has been an acquiescence of nearly 40 years on the part of those in authority with the present method of imparting instruction to the orphan children committed to the charge of this institution, and this has not been without authority, both legislative and judicial. The legislature in 1850 passed an

act for the better education of the children in the several orphan asylums in this state, in which it is provided that:

"The schools of the several incorporated orphan asylums within this state other than those in the city of New York, shall participate in the distribution of the school moneys, in the same manner, and to the same extent, in proportion to the number of children educated therein, as the common schools in their respective cities or districts."

It was held by the Monroe general term in 1867, in the case of St. Patrick's Orphan Asylum v. Board of Education of City of Rochester, 34 How. Prac. 227, that this act was constitutional so far as it applied to moneys raised by taxation in the city of Rochester, but that the constitution might interfere with the use of any of the common-school fund held and disbursed by the state, inasmuch as orphan asylums are not common schools, within the meaning of the constitution. It does not appear in this case that the salaries for these teachers are paid out of the common-school fund. On the contrary, it appears that the funds out of which these salaries are paid were raised by direct taxation upon the property assessed in the city of Rochester. The act of 1850 has been incorporated into the consolidated school law, now in force (Laws 1894, c. 556, tit. 15, art. 12), which reads as follows: .

"The schools of the several incorporated orphan asylum societies in this state, other than those in the city of New York, shall participate in the distribution of the school moneys, in the same manner and to the same extent, in proportion to the number of children educated therein, as the common schools in their respective cities or districts. The schools of said societies. shall be subject to the rules and regulations of the common schools in such cities or districts, but shall remain under the immediate management and direction of the said societies as heretofore."

We have, then, direct legislative authority for the present method of imparting instruction to the inmates of this orphan asylum. The plaintiff, however, contends that the payment of the funds of the city for teaching in such school is in violation of section 4 of article 9 of the constitution. That section provides that:

"Neither the state nor any subdivision thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught."

The first question is, therefore, is an orphan asylum a "school or institution of learning," within the meaning of this section? It is plain that sections 1 to 4 of article 9 have reference to the public-school system of the state, and that the phrase "school or institution of learning" must be considered with reference thereto. In defining an institution, regard must be had to its main and essential features. An orphan asylum is organized mainly as a shelter—a home —for fatherless and motherless children. It takes the place of a home to them, and the state steps in and says it will supply them the same instruction as the common schools offer to more fortunate children. The instruction given is incidental to the main purpose of the asylum. So it has been held that an orphan asylum was not a

common school. People v. Board of Education of City of Brooklyn, 13 Barb. 400; St. Patrick's Orphan Asylum v. Board of Education of City of Rochester, 34 How. Prac. 227. If an orphan asylum is not a school or institution of learning, this provision of the constitution does not apply, and section 14 of article 8 does apply. For that section provides that:

"Nothing in the constitution shall prevent any county, city, town or village from providing for the care, support, maintenance and secular education of inmates of orphan asylums, homes for dependent children or correctional institutions whether under public or private control."

Upon this view, there is no conflict between the two sections of the constitution referred to. This construction agrees with the opinions Mr. Choate and Mr. Root expressed in the constitutional convention of 1894, and with the dicta of the court of appeals. People v. Fitch, 154 N. Y. 14, 47 N. E. 983, 38 L. R. A. 591; People v. Comptroller of City of Brooklyn, 152 N. Y. 399, 46 N. E. 852. I think, also, that the board of education is the agent of the city of Rochester, intrusted with one branch of the city's work, and that when the constitution, in section 14 of article 8, says that nothing shall prevent a city from providing for the secular education of inmates of orphan asylums, it means that the proper boards, officers, or agents of such city should have the charge of providing such education. A city necessarily acts through boards and officers who have charge of definite spheres of action, and, where a statute or constitutional provision applies to a city as a whole, it must likewise apply to all of its departments.

It is also contended by the plaintiff that, inasmuch as the board of education derives its power from that part of the charter passed in 1898 known as the "Dow Law" (chapter 660), there is no authority in that law for payments to teachers in orphan asylums. I think, however, that, inasmuch as that law makes the power of the board of education subject to the general statutes of the state (section 126), the provision of the consolidated school law in reference to orphan asylums referred to above applies to said board of education, and it has power to provide for teachers in said asylums. It follows, also, that, if the acts of the board of education in employing heretofore the four teachers who are made defendants were lawful, then said teachers were in the employ of the board, and are protected by section 140 of the Dow law, which exempts such teachers from the conditions as to qualifications or eligibility imposed by that act. The motion for an injunction should therefore be denied, with $10 costs.

Motion denied, with $10 costs.