(76 App. Div. 588.)

SARGENT v. BOARD OF EDUCATION OF CITY OF ROCHESTER et al.

(Supreme Court, Appellate Division, Fourth Department. November 25, 1902.)

1. ASYLUMS—SCHOOLS—PUBLIC FUNDS—DISTRIBUTION.

A corporation organized under Laws 1848, c. 319, providing for the organization of benevolent, charitable, scientific, and missionary societies, its object being the maintenance and tuition of orphan male children, and in particular male orphan children of soldiers who have lost their lives in the service of the United States, and which is in fact engaged in furnishing to orphan boys committed to its care a home and clothing, food, lodging, moral training, and religious and secular education, is an asylum, and not a school or institution of learning, and is therefore entitled to receive money from a city board of education having charge of the city schools in which the asylum was located, as authorized by Const. art. 8, § 14.

2. SAME—STATUTES—PRIVATE SCHOOLS.

Laws 1850, c. 261, § 1, authorizing the schools of the several incorporated orphan asylum societies in the state, outside the city of New

York, to participate in the distribution of school moneys to the same extent, in proportion to the number of children educated therein, as the common schools in the respective cities or districts, which was re-enacted in the consolidated school law of 1894 (Laws 1894, c. 556, tit. 15, art. 12, § 32), was not repealed or altered by Const. art. 9, § 4, prohibiting the distribution of public moneys to sectarian schools.

Appeal from special term, Monroe county.

Action by James Sargent against the board of education of the city of Rochester and others. From a judgment in favor of defendants (71 N. Y. Supp. 954), plaintiff appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HIS-COCK, and DAVY, JJ.

Salisbury & Phillips, for appellant.

James M. E. O'Grady and William A. Sutherland, for respondents.

WILLIAMS, J. The judgment should be affirmed, with costs. The action was brought by a citizen and taxpayer of the city of Rochester to restrain the board of education and the comptroller and treasurer of the city from auditing or paying four Sisters, employed by the board of education as teachers in the "St. Mary's Orphan Boys' Asylum," for their services as such teachers. Substantially the basis of the plaintiff's right of action is the contention that the institution in question is a school, and not an asylum. If it is a school or institution of learning, then no money can be paid to it directly or indirectly, under section 4, art. 9, of the state constitution, because it is wholly or in part under the control of a religious denomination and denominational doctrines are taught in it. If, however, it is an asylum, then section 14, art. 8, of the constitution permits the payment of moneys for the secular education of the children kept and maintained therein. It was incorporated in December, 1864, under the act of April 12; 1848, entitled "An act for the incorporation of benevolent, charitable, scientific and missionary societies" (Laws 1848, c. 319), and the acts amendatory thereof; and the particular business and object of the institution, as expressed in its certificate, was "the maintenance and tuition of orphan children of the male sex, and in particular male orphan children of soldiers who have lost their lives in the service of the United States." Pursuant to its object as thus expressed, it has furnished to orphan boys committed to its care a home, clothing, food, lodging, moral training, and religious and secular education.

The institution is clearly an asylum, and not a school or institution of learning, within the meaning of the constitutional provisions herein before referred to. Its main object is to furnish a home, food, clothing, lodging, and moral training to the boys committed to its charge. As incidental to the main object, it necessarily furnished the boys with secular and religious education. They could not be permitted to grow up in this state in ignorance, and without religious instruction. The fact that secular education has been furnished in the institution does not change its real character as an asylum, and make it a school or institution of learning. People v. Fitch, 154 N. Y. 14, 47 N. E. 983, 38 L. R. A. 591. See, also,

People v. New York Soc. for Prevention of Cruelty to Children, 161 N. Y. 233–244, 55 N. E. 1063; Id., 162 N. Y. 429, 57 N. E. 1004 et seq.

Especially is this true as such secular education has been paid for by the city of Rochester during all the time the institution has existed, under the authority of the legislature of the state. In 1850 an act was passed entitled "An act to provide for the better education of the children in the several orphan asylums in this state other than in the city of New York." By section 1 of this act it was provided:

"The schools of the several incorporated orphan asylum societies within this state other than those in the city of New York, shall participate in the distribution of the school moneys, in the same manner and to the same extent, in proportion to the number of children educated therein, as the common schools, in their respective cities or districts." Laws 1850, c. 261.

This act was considered by the Monroe general term in September, 1867, in the case of St. Patrick's Orphan Asylum v. Board of Education of City of Rochester, 34 How. Prac. 227. The provisions of the act were substantially re-enacted in the consolidated school law of the state. Laws 1894, c. 556, tit. 15, art. 12, § 32. Under these acts the city of Rochester has, through its board of education, uniformly furnished the orphan asylums of the city with moneys for the secular education of their children, and among them the asylum here in question. The children have been treated as other school pupils have been. Monthly reports of attendance, in the form used by the public schools, have been made to the board of education and incorporated into its records. They have been included in the total number of children in the common schools, reported by the board of education to the common council, forming the basis upon which school funds have been raised, and have been reported by the superintendent of public instruction of the city of Rochester to the state superintendent of public instruction, and the number of teachers in the schools, including those in the asylums, has been made a basis for the distribution of the funds of the state made by the state superintendent to the city of Rochester. These provisions of statute, and the system adopted thereunder, were not interfered with by the new constitution. People v. Comptroller of City of Brooklyn, 152 N. Y. 399, 46 N. E. 852 et seq.

The payment for the services of these four Sisters is not, therefore, improper or an infringement of the provisions of the constitution of the state. The board of education is the proper agency, used by the city as it has been used during all the years under the legislative acts referred to, to furnish the moneys for the secular education of the children in this orphan asylum. The moneys are raised by the common council, and turned over to the board of education, and distributed by such board. The propriety, if not necessity, at the present time, of providing for the secular education of the children in the asylums in the city of Rochester, in their respective institutions, cannot well be doubted. The children must have the education, and it can best be afforded them at their own homes in the institutions. The ordinary school buildings are inadequate, and the

children can be governed and controlled where they are better than in the general school buildings of the city. They ·seem to be well educated by the teachers who have charge of them, and to pass their examinations quite as creditably as do the children attending in the general school buildings of the city. The city of Rochester is a separate educational district, and not under control of the county school superintendents nor the superintendent of public instruction of the state. The board of education has power, among other things, to provide places for the instruction of the children of the city and to employ teachers. They have power to provide for the instruction of the children in the asylums where they are inmates, and they should be permitted to do so. They have power to employ the Sisters who have the care of these children as their secular teachers, and should not be forbidden to do that. The city has to pay the asylums nothing for rent, and only a proper compensation for teachers. There being no constitutional objection, there certainly can be no other objection on the part of the taxpayers to this method of providing for the secular instruction of the children in the asylums in question. There can be no doubt as to the qualifications of the Sisters as teachers that the board of education had a right to employ, and the garb worn by them can do no harm to the children whom they instruct. The children are Catholics by parentage. The garb worn is that of Catholic Sisters. It can in no way affect the children injuriously while they are receiving the secular instruction. They receive no religious instruction during the hours devoted to secular instruction. They very properly devote other hours of the day to such religious training as they see fit, the same as parents may do to their own children, when not in school, but at home. The asylum is the home of these children; the only home they have. We do not deem it essential to discuss other questions raised upon this appeal.

We conclude that the case was properly disposed of by the trial court, and that the judgment should be affirmed, with costs. All concur.