LAURENCE B. STEIN, Plaintiff, *v.* JAMES M. BROWN and Others,
Constituting the Board of Education of the City of Mount
Vernon, Defendants.

Supreme Court, Westchester County, June 23, 1925.

Schools — taxpayer's action under General Municipal Law, § 51, to
restrain board of education from permitting fifth and sixth grade pupils
to be excused forty-five minutes during school hours once each week
for religious instruction in church of parents' choice — action against
individuals " constituting the board of education " is against body
corporate — Education Law, § 890, providing for review of ruling of
board of education by State Commissioner of Education does not
prevent taxpayer's action to restrain board — printing of cards upon
school property was violation of Constitution, art. IX, § 4 — board
has no power to excuse children during school hours for religious
instruction — such release of children violates Education Law, § 621 —
temporary injunction granted.

A taxpayer's action instituted by a taxpayer of a school district to restrain the
board of education from permitting the fifth and sixth grade pupils to be excused
forty-five minutes during school hours once each week for the purpose of
attending religious instruction in the church of their parents' choice, is properly
entitled against the individual members of the board as " constituting the
board of education," for as so entitled it is an action against the body corporate.

The provision contained in section 890 of the Education Law authorizing a
review before the Commissioner of Education of a ruling made by the board
of education does not prevent a taxpayer from maintaining an action under
section 51 of the General Municipal Law to restrain the board from improperly
using the funds and property of the district by permitting the pupils to be
absent from school during school hours and by authorizing the preparation
and printing of cards for the purpose of checking the absences of the children.

The action of the board of education in permitting the cards to be printed during
school hours and upon the school presses was unlawful and in violation of
section 4 of article IX of the Constitution.

The board of education has no power to excuse children during school hours for
religious instruction and to do so constitutes a violation of section 621 of the
Education Law relating to compulsory education.

MOTION for injunction *pendente lite* in an action brought by a
taxpayer to restrain the defendants from allowing the pupils of the
fifth and sixth grades of the public schools of the city of Mount
Vernon to be excused from school instruction for forty-five minutes
once in each week for the purpose of enabling them to receive
instruction in the churches to which their parents desire them to
be sent.

Also a motion to enjoin the defendants from having printed in
connection with said plan any more cards to be filled in by the
parents of such children in order to notify the school authorities
what church such parents wish their children to attend, and from

having printed any more cards to be filled out by the teachers of religious instruction in the various churches of the city in order to notify the school authorities when such children were present and received religious instruction at church; and in addition thereto to enjoin the distribution of cards already printed at the expense of the board of education of Mount Vernon.

*John C. Mahon,* for the plaintiff.

*Hugh M. Hewson, Corporation Counsel,* for the defendants.

SEEGER, J.:

The plaintiff contends that the board of education, in permitting the pupils to leave during school hours for the purpose mentioned, is permitting a curtailment of the regular school hours for secular education, for which he and all citizens are taxed; that such action violates the provisions of the Constitution of the State and of the nation, respecting religious liberty, and the separation of Church and State; and that religious teaching cannot invade the school premises nor the regular hours for secular education, without violating constitutional guaranties respecting religious liberty and the separation of Church and State; also that said action of the board of education constitutes an abdication of its functions in favor of the churches for forty-five minutes each week, and a delegation thereof to the churches, thus constituting the churches the agents of the board of education in the matter of instruction in violation of fundamental guaranties of the State and Federal Constitutions respecting religious liberty and the separation of Church and State.

The affidavits submitted in behalf of the defendant in opposition to the motion show that before the board of education took the action of which complaint is made, the superintendent wrote to the University of the State of New York, in reference thereto, and received a reply to the effect that the State Department had ruled that it was permissible under the Education Law to excuse children from attendance at public school for the purpose of attending religious instruction. These affidavits also show that the printing of the before-mentioned cards was done in the School of Industrial Arts of the city of Mount Vernon as an exercise for the boys; that the only expense was the purchase of the cards, amounting to two dollars and eighty-seven cents, which was paid by the committee on week-day religious education.

It, therefore, appears that the cards were printed during school hours; that the presses and property of the city were used for the purpose, although the cards were not furnished by the city or paid out of public funds.

In opposing the application for the injunction the defendant makes three points:

1. The board of education of the city of Mount Vernon is a corporation, and its members cannot be sued for acts of the board of education; the action should be against the corporation.

2. Under section 890 of the Education Law (formerly § 880; renum. § 890 by Laws of 1918, chap. 252, § 6), the ruling of the board of education can only be attacked before the State Commissioner of Education.

3. The complaint fails to state a cause of action.

The first point is too technical. The action is brought against the members of the board as " constituting the board of education of Mount Vernon." They are not sued as individuals but as a body.

Section 51 of the General Municipal Law, under which the plaintiff claims to bring this action, provides: " All officers, agents, commissioners and other persons acting * * * on behalf of any county, town, village or municipal corporation in this State * * * may be prosecuted, and an action or actions may be maintained against them to prevent any illegal official act * * * or to prevent waste, or injury to * * * any property funds, * * * of such county, town, village or municipal corporation * * *."

When an action is brought to restrain action in behalf of a municipality, the officers whose duty it is to perform the acts sought to be enjoined are proper and usually necessary parties. (32 C. J. 298, § 478, notes 42, 43; Thomson Taxpayers' Actions, 105, 106; *Smith* v. *Crissey*, 13 Abb. N. C. 149.)

As to the second point, that the ruling of the board of education can only be attacked before the State Commissioner of Education, section 890 is in part as follows: "Any person conceiving himself aggrieved may appeal or petition to the commissioner of education who is hereby authorized and required to examine and decide the same; * * * and his decision in such appeals, petitions or proceedings shall be final and conclusive, and not subject to question or review in any place or court whatever. Such appeal or petition may be made in consequence of any action: * * *

" 7. By any other official act or decision of any officer, school authorities, or meetings concerning any other matter under this chapter, or any other act pertaining to common schools."

This does not apply to a cause of action on the part of a taxpayer for an improper use of the funds and property of the board of education or the determination of constitutional questions or illegal acts on the part of officials. Such questions are always for the courts.

We must, therefore, consider the third point, as to whether the complaint states a cause of action.

The cards hereinbefore mentioned were printed during school hours upon the presses and upon the property and premises of the board of education or of the city. The action of the defendants was to that extent unlawful and in violation of article IX, section 4, of the State Constitution, which reads as follows:

" No aid in denominational schools — § 4. Neither the State nor any subdivision thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught."

The fact that no particular denomination was favored or intended so to be by this action of the board of education does not affect the question. The fact is that the property of the board was permitted to be used directly in aid of such schools of religious instruction whose members saw fit to avail themselves of the action taken by the defendants. It seems perfectly clear that it was illegal for the defendants to permit the printing of the cards to be done on its presses.

We now come to the question as to whether the court should enjoin the defendants from excusing the children from school instruction to permit them to receive religious instruction for a definite and fixed period weekly.

Section 621 of the Education Law (as amd. by Laws of 1921, chap. 386), known as the Compulsory Education Law, provides:

" 1. Every child within the compulsory school ages * * * in proper physical and mental condition to attend school, who resides in a city or school district having a population of four thousand five hundred or more and employing a superintendent of schools, shall regularly attend upon instruction for the entire time during which the schools of such city or district are in session as follows:

" 2. * * *.

" c. The period of which any such school shall be in session shall not be less than one hundred and eighty days of actual school."

In the case of *De Lease* v. *Nolan* (185 App. Div. 82) the court said: " The State is sovereign in the matter of the attendance of a child at school. The dominion of the State is absolute as far as attendance upon instruction is concerned during the ages prescribed in section 621 of the Education Law. The consent of the parent to the absence of the child has no effect upon this lawful dominion of the State."

I find nothing whatsoever in the Education Law authorizing either the board of education, the State Commissioner of Education,

or the Education Department, to change, limit or shorten the time of attendance of pupils in public schools, except the provisions of chapter 689, Laws of 1917, authorizing the Commissioner of Education to suspend for the period between the first day of April and the first day of November of each year " for the purpose of aiding and performing labor in the cultivation, production and care of food products upon farms and gardens within the state   *   *   *   subject to such conditions,   *   *   *   as may be imposed by the commissioner of education, and shall be subject to rules and regulations to be prescribed by him."

The Education Law (§ 620, as amd. by Laws of 1921, chap. 386) prescribes the instruction required in public schools. Religious instruction is not one of them. Consequently it would be unlawful and unauthorized for a board of education to substitute religious instruction in the school in place of the instruction required. To permit the pupils to leave the school during school hours for religious instruction would accomplish the same purpose, and would in effect substitute religious instruction for the instruction required by law.

The courts of this State and other States whenever the question has arisen have uniformly discountenanced attempts to join religious instruction with the instruction prescribed for the public schools.

In *Smith* v. *Donahue* (202 App. Div. 656) the court said (VAN KIRK, J.): " At no time has it been the intent of government in our republic to permit the union of secular and religious education in any public school.   *   *   *   Under article 1, section 3, of the Constitution, and similar provisions in Constitutions of other States, which assure the free exercise and enjoyment of religious worship and belief without restraint, the reading of the Bible has been excluded from many of the public schools under protest that such practice was in conflict with the regulations and beliefs of a religious denomination; and the public schools being furnished for all the children, the reading of the Bible was excluded in order that there could be no restraint upon their enjoyment of the public schools and without prejudicing their religious beliefs."

In *People* v. *Board of Education of Brooklyn* (13 Barb. 400) the court said (at p. 411) with reference to common schools, " especially have they been kept, and ought they to be kept free from everything savoring of sectarian influence or control."

Applying these principles laid down by the courts to the question involved in a practical way we can readily understand what the result would be in different localities in the State. In many school districts in the State there is only one church sufficiently near to the school to be reached by the children attending that school. Similar action taken in such localities would favor such church

whatever its denomination. Should it happen that all or nearly all the children or their parents be members of such congregation and avail themselves of the action of the board of education, the action would simply result in shortening the school hours. In cities where churches of all denominations are accessible and the parents avail themselves of such privilege it would likewise amount to such shortening of the school hours. In all cases the time of teachers would be taken up to some extent with the examination of cards and the determination of the question whether the pupils had really attended religious instruction or whether they had merely availed themselves of the opportunity thus afforded of playing truant. Such additional labor imposed upon teachers would divert their attention from other necessary work and indirectly impose expense upon the school board for the purpose.

There is another objection to the plan. The pupils who leave the school weekly for religious instruction are likely to fall behind those that remain the full time as they are deprived of the instruction given during that period. This might cause serious embarrassment to some of the pupils and prevent them from keeping up with their classes. The only illegality involved in this, however, is that it is contrary to the intent and meaning of section 621 of the Education Law hereinbefore quoted requiring every child to attend upon instruction for the *entire time* during which the schools are in session.

I am not unmindful of the fact that the school authorities should have the right to exercise their judgment and discretion in the matter of excusing children from attendance occasionally for good reasons and purposes and that among such purposes attendance at church might be perfectly proper, but the adoption of a plan such as here proposed permitting the shortening of school hours regularly and periodically for any purpose violates the provisions of the Education Law.

Neither can this plan be justified from the standpoint of necessity for the pupils to have time for religious instruction. There are only 180 school days in the year, leaving 185 other days for religious instruction, and if it is necessary or advisable that such instruction should be given on school days the day is long enough for that purpose without encroaching upon school hours.

The determination of the questions involved in this application gives effect to the well-established policy of the State that religious instruction shall not be given in the public schools or under their auspices. Religious instruction belongs to the parents of the children and the churches and religious organizations of the country. It should be given outside of the public schools and outside of school hours. The resolution of the defendants was undoubtedly well

**698**  N. Y. Med. Col. & Hospital for Women *v.* Dieffenbach.

Supreme Court, September, 1925.  [Vol. 125

intended, and is doubtless an outgrowth of the feeling that many well-intentioned persons entertain that the religious instruction of the young is being neglected, and that something should be done to remedy this condition, and that it should be done under the auspices of and in co-operation with the schools, as in effect it would be if the defendants' resolution here attacked were carried out; but the difficulty with it is that it violates the policy above referred to fundamental with the State, and for the reasons indicated their desires cannot be legally carried into effect.

The injunction applied for is, therefore, granted.