THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH LEWIS, Appellant, *v.* FRANK PIERREPONT GRAVES, Commissioner of Education of the State of New York, Respondent.

Third Department, January 5, 1927.

Schools — conduct of elementary schools — absence from school for religious instruction — application for peremptory mandamus to compel Commissioner of Education to direct White Plains school board and school officers to discontinue plan of allowing school children to be excused one-half hour each week for religious education — plan was adopted in response to general request — relator is not resident of White Plains and his right to maintain proceedings is questioned — Commissioner of Education had discretion as to method of procedure — plan of local school board does not violate New York Constitution, art. 9, § 4, relative to aid in denominational school or Education Law (art. 23) relating to compulsory education — Education Law, § 621, does not regulate hours of attendance — hours of attendance are for determination of local authorities — petitioner is not entitled to peremptory mandamus.

This is an application for a peremptory order of mandamus to compel the State Commissioner of Education to direct the school board of the city of White Plains and the school officers thereof to discontinue the policy or plan of permitting students in the elementary grades to absent themselves once each week, with the permission of their parents or guardian, for thirty minutes for the purpose of receiving religious instruction. The school board adopted this plan or policy in response to a general request therefor, and designated the last thirty minutes of the school day on Wednesday as the time when students might be dismissed for the purpose of receiving religious instruction. The petitioner is not a resident of White Plains and his right to maintain the proceeding is questioned by the Appellate Division. Furthermore, since the Commissioner of Education might, on his own motion, have ordered the discontinuance of the plan if it were illegal (Education Law, §§ 94–96, 636) or have awaited an appeal under Education Law, section 890, when a determination could have been had after a full hearing, it would seem that a peremptory mandamus order ought not to issue unless the Commissioner's conduct was arbitrary, delinquent or in bad faith, since he had a choice of policies, but this point is not decided. Since these preliminary questions were either not raised by the respondent or were not pressed on the argument, the case is considered on the merits.

The plan or rule adopted by the school authorities of the city of White Plains does not violate section 4 of article 9 of the State Constitution relating to aid in denominational schools. In this case the only public funds used were those represented by salaries to the teachers for the time taken in issuing and receiving

cards excusing the children and ascertaining, if possible, if the parents' directions had been obeyed.

The plan or policy adopted by the White Plains school board does not violate the provisions of article 23 of the Education Law, and particularly section 621, in reference to compulsory attendance, for the statute does not designate the number of hours each day that the students shall attend school, but leaves that to the discretion of the local school authorities, and furthermore, it has always been the policy of this State to permit reasonable absences from school for religious observance and for other purposes.

Under the circumstances the petitioner is not entitled to a peremptory order of mandamus.

Appeal by the relator, Joseph Lewis, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Albany on the 22d day of May, 1926, denying his application for a peremptory mandamus order.

*John C. Mahon,* for the appellant.

*Arthur Garfield Hays* and *Newman Levy* of counsel, for the appellant, filing separate brief.

*Ernest E. Cole,* for the respondent.

*Charles H. Tuttle, John R. Bushong* and *Charles D. Lewis* of counsel, for parties intervening by permission.

*Raymond M. Hudson,* filing brief by permission.

Davis, J. The school authorities of the city of White Plains in the year 1925–1926 adopted a plan of dismissing certain school children in elementary grades once each week to enable them to receive religious instruction. This action was taken in response to a very general sentiment amongst citizens, indorsed by practically all the clergy. Each parent was permitted to determine whether his children were to receive such instruction, and if so the place where given. The period selected was the last thirty minutes of the school day on Wednesday, one not devoted to recitation but " a study, helping or reading period."

The appellant after demanding that the Commissioner of Education order this practice discontinued, sought by peremptory order of mandamus to compel him to give directions to the local board and to school officers generally to discontinue such policies.

At the outset we will dismiss from consideration any question except that arising at White Plains. What policies have been adopted in other schools is not disclosed in the record; and we will not attempt to give a general advisory opinion.

The operation of the plan has apparently been satisfactory to the citizens of White Plains. At least, no one has voiced objection before the Commissioner or here. The petitioner is not a resident

of that city, and so far as it appears, he pays no taxes in the district and sends no children to its schools. . It is difficult to understand how he is affected or aggrieved; and what right he has to bring this proceeding. The remedy given by mandamus is largely discretionary and always depends upon some clear legal right. It may be invoked to enforce a public right by a citizen and resident sharing with others the same general grievance (*People ex rel. Pumpyansky* v. *Keating,* 168 N. Y. 390) but that is not the case here. (*Matter of Eiss* v. *Summers,* 205 App. Div. 691, 697; appeal dismissed, 236 N. Y. 638.)

Furthermore, peremptory mandamus will not issue where the public officer is called upon to exercise discretion in his method of procedure. It is likely that if the local authorities had taken illegal action, the Commissioner on his own motion might have ordered its correction. (Education Law, §§ 94–96. 636.) He also might wait until on an appeal the matter was brought before him for judicial determination. (Education Law, § 890, as renum. from § 880 by Laws of 1918, chap. 252.) There was at least doubt whether this policy was illegal. Summary determination of the question by peremptory order would naturally arouse feeling amongst those who believed in the wisdom and legality of their plan. A determination after full hearing, with parties represented by counsel, might seem a wiser course. The choice between these policies rested in his discretion. Unless his conduct was arbitrary, delinquent or in bad faith, a court will not direct him which choice to make. (*People ex rel. Harris* v. *Commissioners,* 149 N. Y. 26; *People ex rel. Peixotto* v. *Board of Education,* 212 id. 463, 466.)

The petitioner's complaint relates to a rule or ordinance of a local board of education. Lacking direct interest, it would seem that he was submitting only moot or abstract legal questions. The validity of ordinances and statutes and their constitutionality will be determined only when presented by a party affected thereby. (*People* v. *Sanger,* 222 N. Y. 192; *Board of Education* v. *Board of Education,* 76 App. Div. 355; affd., 179 N. Y. 556; *Matter of Attorney-General* v. *Taubenheimer,* 178 App. Div. 321; *Louisville & N. R. R. Co.* v. *Finn,* 235 U. S. 601, 610; *Hatch* v. *Reardon,* 204 id. 152, 160.)

These preliminary questions either were not raised by respondent or were not pressed on the argument, very likely for the reason that the Commissioner desired a decision on the merits; so we pass them without further discussion or decision.

We come then to the question of the legality of the rules adopted by the local school authorities. Although the briefs of the petitioner and intervenors are largely devoted to controversy as to whether religious instruction is beneficial, we are not concerned here with the

wisdom of the policy, determined for themselves by the parents and the local board. We will consider only the legal questions presented.

1. Does the rule adopted by the school authorities violate the constitutional provisions relative to aid in denominational schools?

Article 9, section 4, of the Constitution provides: " Neither the State nor any subdivision thereof, shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance, other than for examination or inspection, of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught."

The inhibition is against the use of property or money in aid of schools under the control or direction of a religious denomination. It is not necessarily a violation to mention the subject of religion in the schools or on school property. Either because of simple religious exercises at the opening of school or the occasional use of school buildings for meetings on Sunday, controversies have been brought before the Department of Education from time to time. No one claimed these trifling matters amounted to a violation of the Constitution. These questions were determined with reference to local statutes or on grounds of policy. (See Judicial Decisions [Finegan], pp. 524–532, 877–894.) We mention this as indicating that the acts complained of here are not entirely unprecedented. There exists a simple method of dealing with such matters, if any one is actually aggrieved.

Here there was no property or public money used in aid or maintenance of any denominational school. Cards, not provided by the school, were distributed and the parents indicated thereon the place they wished their children to go for instruction. It was entirely voluntary with the parent whether the child was excused. There was some " check up " afterward to indicate whether the privilege should be withdrawn. All that the petitioner can claim in regard to public expense is the time spent by the teacher during school hours in thus issuing and receiving the card, excusing the child, and ascertaining, if possible, if the parent's direction has been obeyed. The acts of the teacher are the same as when excusing a child to attend any religious or secular ceremony at its parent's request. It is a part of ordinary school routine and discipline. The Constitution is designed for practical purposes and deals with realities, not fictions or conditions largely imaginary. It is intended to operate benignly in the interest of the governed. It should receive a broad, not a petty construction. (*People* v. *Franche*, 50 N. Y. 288, 291, 295; *Matter of Broadway*, 63 Barb. 572, 593.) Its commands are not violated by acts so trivial and remote. (*Sargent*

v. *Board of Education,* 76 App. Div. 588; affd., 177 N. Y. 317; *State ex rel. Gilbert* v. *Dilley,* 95 Neb. 527.)

2. Does such policy violate the provisions of article 23 of the Education Law providing for compulsory education?

The particular statute applicable here is section 621 of the Education Law (as amd. by Laws of 1921, chap. 386). It provides that every child within the compulsory school ages in proper physical and mental condition " shall regularly attend upon instruction for the entire time during which the schools  *  *  *  are in session." What constitutes proper physical and mental condition is defined and regulated. Instruction in certain subjects is prescribed. The minimum number of days for schools to be in session is fixed, but not the number of hours per day. (See Education Law, §§ 620, 621, as amd. by Laws of 1921, chap. 386.) Much is left to the judgment of local authorities to whom management of schools is intrusted, subject to advice and direction of the Commissioner. There is no claim that the children did not take the prescribed subjects, or failed to attend the prescribed number of days; nor did the children excused miss recitations in any subject.

Counsel for the petitioner contend that so excusing children constitutes a violation of this statute. They urge that the requirement to attend for " the entire time during which the schools  *  *  * are in session " means that it is illegal to excuse a child at any hour within those fixed for the school day. They cite and rely upon *Stein* v. *Brown* (125 Misc. 692) as decisive of the question. That case is not before us for review and we are not called upon either to approve or disapprove the decision. The facts presented to that court were different from those here. If the case is to be regarded as authority it will be necessary to distinguish carefully between what was said in the opinion and what was actually decided, and limit it to its particular facts.

The statute is general in its terms. Its purpose and intent must be sought in the conditions surrounding its adoption, the purpose to be served and the methods furnished for its administration. It was prompted by conditions of illiteracy. It was enacted to promote intelligence amongst future adult citizens. It deals with children between seven and fourteen years of age. It is to be made effective through instruments of its own creation, local and State officers.

It would be a narrow construction that required every child, physically able, aged from seven to fourteen years, to attend at school every hour of every day the school was in session. It would impose upon children of tender years conditions as drastic and rigorous as those of military law and discipline. In some localities

with insufficient school accommodations, there are double sessions for different children each day. The construction contended for would require all children to attend both sessions. There are occasions when it is imperative that the parents have their children at home for assistance. There are other occasions when they require their absence from school because of church or civic celebrations, or purely for pleasure that the family may be gathered together. It is to the credit of school authorities that children are readily excused on such occasions and no one has deemed it a violation of the law. Those who have had very young children in school know that it is common practice to excuse them after recitation. Larger children, lacking only a few subjects for graduation, whose recitations, we will say, occur in the forenoon are then excused and are not required to return. At examination time, children are excused except during the hours of examination. These facts are as commonly known as is the fact that they are not illegal.

The Legislature has not been unmindful of the rights or interests of parents relative to the guidance and control of their children. In the interest of the State it has enacted that children must be educated. With the great majority this legislation was unnecessary. It was intended to control the action of those delinquent and indifferent, not only to the interests of the State but of their children. There was no legislative policy to interfere arbitrarily with the family relation by oppressive acts. Nor is there conflict in policy between the educational authorities and competent, intelligent parents. Both desire that children shall obtain the advantages of education which the State undertakes to furnish. It is natural that parents should wish their children to have religious instruction at any favorable opportunity. It is not thought wise that it should be given directly in the school. But when children are assembled, they may be sent elsewhere. We are told that in twenty-three other States there are in force methods similar to those employed here. The Commissioner and local authorities have adopted a benevolent policy in which the interests of both parents and children are considered. They recognize that all education is not acquired in the schools; that except for subjects legally prescribed, the parents may select the studies their children shall pursue; that it is the right of parents to direct the destiny of their children and guide them along paths of filial duty as well as in those of obligation to the State (*Pierce* v. *Society of Sisters,* 268 U. S. 510, 535); and that a belief in religion is not foreign to our system of government. (*Holy Trinity Church* v. *United States,* 143 U. S. 457, 465; *People* v. *Ruggles,* 8 Johns. 290, 294.)

With these conditions in mind the Commissioner and his predecessors under general statutory authority, have made rules and regulations interpreting and supplementing this compulsory education statute. A " bulletin " containing some of these rules has been generally circulated. It gives notice to school officers that at the parent's request a pupil may be excused one-half day weekly for music lessons. Likewise, children may be excused on " days set apart for religious observance or instruction." The practice is general in the schools at the request of parents to excuse children to participate in church or religious festivals, and to attend confirmation classes and other religious instructions. The Commissioner delegates to local authorities the matter of excuse for absence, saying, " It is a matter of common knowledge and experience that no inflexible rule or set of rules can be established arbitrarily controlling the entire subject of excusable absences that will work justice in all cases and under all conditions."

All these policies which naturally impress the liberal mind as reasonable and just, could not have been adopted if there had been blind and stubborn adherence to the strict letter of the statute. In its administrative work the Department has followed the broad intent of the law. It has put in operation familiar principles of justice toward both pupil and parent, while accomplishing the purpose of education. We recognize that parents have as much right to have their children receive religious instruction as instruction in music during some portion of the school week. We give weight to the practical construction of this statute by those men of high character, who have been chosen to enforce it, and who have acted conscientiously and with trained skill in performing difficult duties. Such interpretation generally acquiesced in for a considerable period of time, is a circumstance of great importance in determining what construction should now be put upon its terms. (*Grimmer* v. *Tenement House Dept.*, 205 N. Y. 549; *Bullock* v. *Cooley*, 225 id. 566, 571.) Absences occurring through being thus excused do not amount to irregular attendance. There is no such iron rule for attendance as appellant has invoked.

The State by its educational policy seeks to build from its youth useful citizens of intelligence and character, not merely pedants and philosophers. In following this policy it should not only consider the wishes but invite the aid of parents. When the wish of parents for week day religious instruction for their children involves no serious interruption to school attendance, the State can have no purpose to defeat it. If local school authorities render their assistance by methods so innocuous as those detailed here, it does not amount to illegality. Reasonableness in the method adopted

is the test of such legality. Neither the local school officers nor the Commissioner of Education have here violated that rule.

When genuine infractions of constitutional or statutory provisions relative to schools arise, the courts are not unready or unwilling to condemn them. (*People ex rel. Roman Catholic Orphan Asylum* v. *Board of Education*, 13 Barb. 400; *O'Connor* v. *Hendrick*, 109 App. Div. 361; affd., 184 N. Y. 421; *Smith* v. *Donahue*, 202 App. Div. 656.)

The order should be affirmed, with costs.

COCHRANE, P. J., VAN KIRK, HINMAN and McCANN, JJ., concur.

Final order affirmed, with costs.