In the Matter of JOSEPH LEWIS, Petitioner, against FRANCIS T. SPAULDING, as Commissioner of Education of the State of New York, et al., Respondents.

Supreme Court, Special Term, Albany County, November 12, 1948.

*Arthur Garfield Hays* and *Osmond K. Fraenkel* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Ruth Kessler Toch* and *Kent H. Brown* of counsel), for Francis T. Spaulding, as Commissioner of Education, respondent.

*John P. McGrath, Corporation Counsel* (*Michael A. Castaldi* and *Arthur H. Kahn* of counsel), for Board of Education of City of New York, respondent.

*Charles H. Tuttle, Porter R. Chandler* and *Louis Loeb* for Greater New York Coordinating Committee on released time of Jews, Protestants and Roman Catholics, intervener, respondent.

ELSWORTH, J. This proceeding has been engendered by the recent decision of the Supreme Court of the United States in the case of *Illinois ex rel. McCollum* v. *Board of Education, of School Dist. No. 71 Champaign Co.* (333 U. S. 203). The petitioner, as a citizen of the United States and a resident of Westchester County, State of New York, has instituted the same under article 78 of the Civil Practice Act. He asks discontinuance of the practice popularly known as the '' Released Time '', whereby public school students in the State of New York (inclusive of the city of New York) are released from regular attendance for the purpose of religious instruction. Such discontinuance is sought upon the ground that the practice violates the First Amendment to the United States Constitution as made applicable to the States by the Fourteenth Amendment requiring separation of church and State by reason of the above-cited decision in the *McCollum* case (*supra*). Stated in detail, the relief prayed for as against the respondent Commissioner of Education is an order directing him to notify respondent board of education of the city of New York and the school officers in the other school districts and cities of the State of New York, (1) to discontinue the practice of releasing children from regular school attendance to permit them to receive religious instruction, (2) to discontinue the existing rules or regulations providing therefor, and (3) not to adopt such rules or regulations in the future. In addition, as against the respondent board of education of the city of New York, the petitioner asks a specific direction that it discontinue its present released time program and its rules or regulations providing therefor.

The practice of which the petitioner complains consists of excusing the pupils from school for one hour or less, once weekly, upon request of their parents, to enable them to attend classes in religious instruction or education outside school buildings and grounds and under the auspices of the church of their choice.

In 1926, the present petitioner instituted a proceeding against the then Commissioner of Education of the State of New York, wherein he challenged the legality and constitutionality of a released time program, as then operated in the city of White Plains. The program there under attack was essentially the same as that in operation today, both in the city of New York and elsewhere in the State. The petitioner's contention as made in that proceeding that the White Plain's program was " in violation of the constitutional guarantees of the New York State and United States Constitutions respecting religious liberty and the separation of church and state " was rejected at Special Term, in the Appellate Division, and in the Court of Appeals (*Matter of Lewis* v. *Graves*, 127 Misc. 135, affd. *sub nom.* *People ex rel. Lewis* v. *Graves*, 219 App. Div. 233, affd. 245 N. Y. 195, motion for reargument denied 245 N. Y. 620). In so holding, the Court of Appeals said (p. 199) : " Eternal vigilance is the price of constitutional rights. But it is impossible to say, as matter of law, that the slightest infringement of constitutional right * * * has been shown in this case."

For some time prior to 1926, when the petitioner instituted his former proceeding, some local school authorities of this State outside of the city of New York, acting under general supervisory powers conferred upon them by the Education Law, had authorized the practice or adopted procedures whereby certain children attending public school might be excused from attendance for short periods of time, once weekly, to enable them to attend classes in religious instruction. The matter was handled in the same manner as were parental requests for excused absence for observance of religious Holy Days, Confirmation Classes or any other legitimate cause. By 1940 the practice of excusing public school children had become more widespread. In approval of the practice then being carried on, and with the apparent intent of obtaining unification thereof by the adoption of State-wide rules governing the same, the Legislature in that year enacted what is now paragraph b of subdivision 1 of section 3210 of the Education Law (L. 1940, ch. 305) providing as follows: " b. Absence for religious observance and education shall be permitted under rules that the commissioner shall establish."

Pursuant to such statutory authority, the State Commissioner of Education on July 4, 1940, adopted the following regulations, now remaining in full force and effect:

" 1. Absence of a pupil from school during school hours for religious observance and education to be had outside the school building and grounds will be excused upon the request in writing signed by the parent or guardian of the pupil.

" 2. The courses in religious observance and education must be maintained and operated by or under the control of duly constituted religious bodies.

" 3. Pupils must be registered for the courses and a copy of the registration filed with the local public authorities.

" 4. Reports of attendance of pupils upon such courses shall be filed with the principal or teacher at the end of each week.

" 5. Such absence shall be for not more than one hour each week at the close of a session at a time to be fixed by the local school authorities.

" 6. In the event that more than one school for religious observance and education is maintained in any district, the hour for absence for each particular public school in such district shall be the same for all such religious schools." (Regulations of the Commissioner of Education, art. 17, § 154; N. Y. Official Compilation of Codes, Rules and Regulations, p. 683.)

Thereafter on November 13, 1940, the board of education of the city of New York promulgated rules governing the operation of a released time program in that city. Said rules were slightly amended in 1941 and are now as follows:

" 1. A program for religious instruction may be initiated by any religious organization, in cooperation with the parents of pupils concerned. There will be no announcement of any kind in the public schools relative to the program.

" 2. When a religious organization is prepared to initiate a program for religious instruction, the said organization will notify parents to enroll their children with the religious organization, and will issue to each enrolled pupil a card countersigned by the parent and addressed to the principal of the public school, requesting the release of the pupil from school for the purpose of religious instruction at a specific location. The said cards will be filed in the office of the public school as a record of pupils entitled to be excused, and will not be available or used for any other purpose.

" 3. Religious organizations, in cooperation with parents, will assume full responsibility for attendance at the religious center and will file with the school principal, weekly, a card attendance

record and in cases of absence from religious instruction, a statement of the reason therefor.

" 4. Upon the presentation of a proper request as above prescribed, pupils of any grade will be dismissed from school for the last hour of the day's session on one day of each week to be designated by the Superintendent of Schools. A different day may be designated for each borough.

" 5. Pupils released for religious instruction will be dismissed from school in the usual way and the school authorities have no responsibility beyond that assumed in regular dismissals.

" 6. There shall be no comment by any principal or teacher on the attendance or non-attendance of any pupil upon religious instruction."

The petitioner alleges no facts descriptive of the manner in which the released time programs complained of operate. It must be concluded therefore that his contention as the basis for this proceeding is that " Released Time " is per se unconstitutional and, as hereinbefore stated, made so by reason of the decision of the United States Supreme Court in *Illinois ex rel. McCollum* v. *Board of Education of School Dist. No. 71, Champaign Co. (supra)*. That proposition cannot be concurred in. A reading of the several opinions in the *McCollum* case leads to a contrary conclusion, namely, that the constitutionality of a released time program is to be tested by a consideration of the factual aspects of the particular program under scrutiny. In substantiation of that view the following excerpts from the concurring opinion of Mr. Justice FRANKFURTER in the *McCollum* case are quoted (pp. 225–226, 231):

" Of course, ' released time ' as a generalized conception, undefined by differentiating particularities, is not an issue for Constitutional adjudication. Local programs differ from each other in many and crucial respects. Some ' released time ' classes are under separate denominational auspices, others are conducted jointly by several denominations, often embracing all the religious affiliations of a community. Some classes in religion teach a limited sectarianism; others emphasize democracy, unity and spiritual values not anchored in a particular creed. Insofar as these are manifestations merely of the free exercise of religion, they are quite outside the scope of judicial concern, except insofar as the Court may be called upon to protect the right of religious freedom. It is only when challenge is made to the share that the public schools have in the execution of a particular ' released time ' program that close judicial

scrutiny is demanded of the exact relation between the religious instruction and the public educational system in the specific situation before the Court.

" The substantial differences among arrangements lumped together as ' released time ' emphasize the importance of detailed analysis of the facts to which the Constitutional test of Separation is to be applied." (pp. 225, 226)."

" We do not consider, as indeed we could not, school programs not before us which, though colloquially characterized as ' released time ', present situations differing in aspects that may well be constitutionally crucial. Different forms which ' released time ' has taken during more than thirty years of growth include programs which, like that before us, could not withstand the test of the Constitution; others may be found unexceptionable." (p. 231).

Opinions were written in the *McCollum* case (*supra*) by Mr. Justice BLACK, Mr. Justice FRANKFURTER, Mr. Justice JACKSON and Mr. Justice REED. The last-named Justice dissented and held the Champaign system there under consideration to be constitutional. As shown by the quotation heretofore made therefrom, the language of Mr. Justice FRANKFURTER's opinion fixes definite limits upon the scope of the decision, and seems clearly to hold that " Released Time " is constitutional unless characterized by elements rendering it otherwise. Three of the Justices joined in this opinion, namely, Mr. Justice JACKSON, Mr. Justice RUTLEDGE and Mr. Justice BURTON. It thus appears that at least five of the nine Justices of the United States Supreme Court were in agreement upon the proposition that " Released Time " as such is not unconstitutional. The Court of Appeals of this State, in *People ex rel. Lewis* v. *Graves* (*supra*) held to the same effect. Furthermore, a reading of the entire opinion of Mr. Justice BLACK, who wrote for the court in the *McCollum* case, seems reasonably subject to the interpretation that even he had no intention of passing in blanket terms upon the abstract issue of " Released Time " in general.

For the purposes of reaching a determination in this proceeding, the released time program as practiced in the City of New York is accepted as generally typical of all the New York plans here under attack. Such differences as may exist, are minor and inconsequential.

In support of its answer herein, the board of education of the city of New York has submitted an affidavit of its president, containing a factual analysis of the Champaign and New York

City plans. This analysis so clearly demonstrates the substantial dissimilarity of the two plans that the same is here set forth in full:

| *Champaign Plan* | *New York City Plan* |
| --- | --- |
| 1. No underlying enabling State statute. | 1. Education Law § 3210 is the enabling statute which provides that " absence from required attendance shall be permitted only for causes allowed by the general rules and practices of the public school "; and further provides that " absence for religious observance and education shall be permitted under rules that the commissioner shall establish." |
| 2. Religious training took place in the school buildings and on school property. | 2. Religious training takes place outside of the school buildings and off school property. |
| 3. The place for instruction was designated by school officials. | 3. The place for instruction is designated by the religious organization in co-operation with the parent. |
| 4. Pupils taking religious instruction were segregated by school authorities according to religious faith of pupils. | 4. No element of segregation is present. |
| 5. School officials supervised and approved the religious teacher. | 5. No supervision or approval of religious teachers or course of instruction by school officials. |
| 6. Pupils were solicited in school buildings for religious instruction. | 6. School officials do not solicit or recruit pupils for religious instruction. |
| 7. Registration cards distributed by school. In at least one instance, the registration cards were printed at the expense of school funds. | 7. No registration cards furnished by the school or distributed by the school. No expenditures of public funds involved. |
| 8. Non-attending pupils isolated or removed to another room. | 8. Non-attending pupils stay in their regular classrooms continuing significant educational work. |
|  | 9. No credit given for attendance at the religious classes. |
|  | 10. No compulsion by school authorities with respect to attendance or truancy. |
|  | 11. No promotion or publicizing of the released time program by school officials. |
|  | 12. No public moneys are used. |

Aside from the other points of variance shown by the fore-going analysis, particularly significant is the fact that unlike the Champaign plan, the released time program as operated by the city entails no use of the school buildings for the religious instruction, nor is there any expenditure of public funds for that purpose. The only apparent participation (if such it may be called) by the school authorities in the New York City plan is the requirement of a written request for release signed by the parent or guardian of the pupil, and the requirement that a report be filed of the attendance of the pupil upon religious instruction for which release has been requested.

In view of the opinion herein expressed that the decision in the *McCollum* case (*supra*) does not make '' Released Time '' as such unconstitutional, the programs challenged in this pro-ceeding can only be condemned upon a finding that they are in aid of religion. That is the ground upon which the decision in the *McCollum* case is predicated. This court cannot so find. It believes the New York plan free from the objectionable features which motivated the United States Supreme Court to declare the Champaign plan unconstitutional.

Historically and inherently the people of our country are predominantly a religious people. The Preamble to our own State Constitution is in these words: '' WE, THE PEOPLE of the State of New York, grateful to Almighty God for our Freedom, in order to secure its blessings, DO ESTABLISH THIS CONSTITUTION.'' From such sources, however, the State derives no power to favor religious believers or to disfavor nonbelievers. The State must be neutral. Its '' power is no more to be used so as to handicap religions than it is to favor them.'' (*Everson* v. *Board of Educa-tion of Town of Ewing*, 330 U. S. 1, 18).

Fundamental is the right of the parent to rear his child in a particular religious faith, or to rear him as a nonbeliever if he so elects. Denial of this fundamental right to the parents now exercising the same through the medium of the New York released-time programs should certainly not be made on specu-lative grounds. Clearness and certainty are the factors that must control. Judged in the light of those essential require-ments, this court can neither in law nor in conscience hold that the programs here assailed are constitutionally condemned by the *McCollum* decision (*supra*).

The petition is dismissed as against the respondents Com-missioner of Education of the State of New York, and the board of education of the city of New York, upon the ground that it

fails to state facts sufficient to constitute a cause of action. Costs in the amount of $50 are allowed to each of said respondents.

The objection raised in point of law by the respondent, Commissioner of Education of the State of New York, that the matter is *res judicata* as to him is found untenable.

Submit orders.